**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

ROGER DALE WALLACE                                       CIVIL ACTION

VERSUS                                                              NO.: 15-685

ROBERT TANNER, WARDEN                              SECTION: "H"(5)

<u>REPORT AND RECOMMENDATION</u>

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

*Procedural History*

Petitioner, Roger Wallace, is a state prisoner incarcerated in the Louisiana State Penitentiary in Elayn Hunt Correctional Center in St. Gabriel, Louisiana. He was charged with the creation or operation of a clandestine laboratory for the unlawful manufacture of methamphetamine in violation of Louisiana Revised Statute 40:983 A(1).[1] Following a

---

[1] State Rec., Vol. 1 of 4, Twenty-Second Judicial District Court, Parish of St. Tammany Felony Bill of Information.

two-day trial, on March 15, 2011, a jury found him guilty as charged.[2]   The State subsequently filed a multiple bill of information.   On May 26, 2011, Wallace admitted to the allegations in the multiple bill of information and was sentenced as a third felony offender to twenty-five (25) years imprisonment at hard labor.[3]

On direct appeal, Wallace assigned a single error that the trial court improperly allowed the State to introduce evidence of other crimes.   The Louisiana First Circuit Court of Appeal affirmed the conviction and sentence.[4]   Wallace did not pursue relief from this judgment in the Louisiana Supreme Court.

On or about November 15, 2012, Wallace submitted an application for post–conviction relief to the state district court.[5]   In that application, he raised three

---

[2] State Rec., Vol. 1 of 4, Minute Entry, 3/15/11; Jury Verdict; *see also* State Rec., Vol. 2 of 4, Trial Transcript (March 15, 2011), p. 469.

[3] State Rec., Vol. 1 of 4, Minute Entry, 5/26/11, *see also* State Rec., Vol. 2 of 4, Transcript of Multiple Offender Bill Sentencing, (May 26, 2011).

[4] *State v. Wallace*, 11-KA-1687, 2012 WL 1551736 (La. App. 1st Cir. 5/2/12). *See* State Rec., Vol. 3 of 4 (unpublished opinion).

[5] State Rec., Vol. 3 of 4, Uniform Application for Post-Conviction Relief.   Federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system."   *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006). If that date cannot be gleaned from the state court record with respect to the filing, this Court will use the signature date of the applications as the filing date, in that the various applications were obviously placed in the mail no earlier than the date they were signed. In those instances where no signature date appears on a document and no other evidence is available, the Court will look to the file-stamp placed on the document by the

grounds for relief:     (1) he was denied the right to effective assistance of counsel during trial and on appeal in that trial counsel failed to file a motion to suppress and appellate counsel failed to raise on appeal the omitted motion to suppress and the erroneous admission of the State's unqualified expert witness; (2) his conviction was obtained as the result of an unconstitutional search and seizure; and (3) the trial court erred in allowing admission of his inculpatory statement.     However, Wallace then filed a motion to withdraw that application for post-conviction relief and he was allowed to do so.[6]

On or about February 25, 2013, Wallace filed a second application for post-conviction relief with the state district court.     In that application, he raised three claims for relief: (1) trial counsel was ineffective during pretrial stages and at trial for failing to pursue a motion to suppress the evidence seized from his vehicle; (2) he was not afforded a fair opportunity to litigate his Fourth Amendment claims regarding an illegal search and seizure due to ineffective assistance of counsel and (3) appellate counsel was ineffective for failing to raise on appeal the erroneous admission of an unqualified expert witness.     Wallace later supplemented the post-conviction relief application with additional claims of ineffective assistance of trial counsel during the multiple offender sentencing hearing.[7]     On August 21,

---

clerk of court. This application bears a file stamp date of November 15, 2012.

[6] State Rec., Vol. 3 of 4, Motion to Withdraw Application for Post-Conviction Relief and District Court Order.

[7] *Id.*, Uniform Application for Post-Conviction Relief signed and dated February 25,

3

2013, the district court denied relief.[8]    On or about September 26, 2013, Wallace filed a related writ application with the Louisiana First Circuit Court of Appeal.[9]    On February 18, 2014, the Louisiana First Circuit denied relief.[10]   In March and April 2014, Wallace filed two supervisory writ applications with the Louisiana Supreme Court.[11]

While these writ applications were pending, on or about May 21, 2014, Wallace filed a third application for post-conviction relief with the state district court.[12]    In this application, he raised two claims:    (1) appellate counsel was ineffective for failing to assert as grounds for relief the erroneous denial of mistrial when jurors viewed statements made by the confidential informant in the search warrant affidavit and (2) the trial court allowed hearsay evidence thereby denying him the right to confront and cross-examine the

_____

2013 and Petitioner's Supplement to Original Memorandum signed and dated June 24, 2013; *see also* Petitioner's Amended Supplement to Original Memorandum dated August 12, 2013.

[8]  State Rec., Vol. 3 of 4, District Court Order signed August 21, 2013, denying post-conviction relief.

[9]  State Rec., Vol. 4 of 4, Louisiana First Circuit Writ Application No. 13-KW-1677.

[10]  State Rec., Vol. 4 of 4, *State v. Wallace*, 2013-KH-1677 (La. App. 1st Cir. Feb. 18, 2014) (unpublished writ ruling).

[11]  State Rec., Vol. 4 of 4, Louisiana Supreme Court Writ Application No. 14-OK-622 and No. 14-KH-606.

[12]  State Rec., Vol. 3 of 4, Uniform Application for Post-Conviction Relief dated May 21, 2014.

confidential informant or the detective whom the confidential informant spoke to about the information.    On May 30, 2014, the district court denied relief.[13]    On or about June 27, 2014, Wallace filed a related writ application with the Louisiana First Circuit.    On September 8, 2014, the court of appeal denied relief.[14]    On or about October 8, 2014, Wallace supplemented his Louisiana Supreme Court writ application to include this claim for relief.[15]

On or about January 2, 2015, Wallace filed a motion to amend or supplement his post-conviction relief application with the state district court.[16]   He sought to add a claim of ineffective assistance of appellate counsel for failing to assert that the trial court abused its discretion in denying a motion for mistrial when the prosecutor commented during closing argument on Wallace's failure to testify.    On January 9, 2015, he sought to supplement his Louisiana Supreme Court writ application to include this claim even though that claim was still pending before the district court.    On January 23, 2015, the Louisiana Supreme Court

---

[13]   District Court Order denying post-conviction relief signed May 30, 2014.

[14]   State Rec., Vol. 3 of 4, *State v. Wallace*, 14-KW-0957 (La. App. 1st Cir. Sept. 8, 2014) (unpublished writ ruling).    *See* State Rec., Vol. 4 of 4, Louisiana First Circuit Writ Application No. 14-KW-0957 signed and dated June 27, 2014.

[15]   State Rec., Vol. 4 of 4, Memorandum in Support of Writ to Supplement Pleadings, No. 14-KH-606 (letter to court dated October 8, 2014).

[16]   State Rec., Vol. 3 of 4, Motion to Amend/Supplement Post-Conviction Claim with verification signed January 2, 2015.

denied his writ applications without stated reasons.[17]    On February 23, 2015, the district court noted that no post-conviction relief application was pending for Wallace to supplement and denied the asserted claim for relief on the merits.

On February 27, 2015, Wallace tendered his federal application for *habeas corpus* relief.[18]  In his petition, Wallace asserts the following grounds for relief:    (1) trial counsel was ineffective for failing to file a motion to suppress the illegal search and seizure of evidence; (2) he was not afforded a fair opportunity to litigate his Fourth Amendment claims due to ineffective assistance of counsel; and (3) appellate counsel was ineffective for failing to raise issues on appeal, including the trial court's abuse of discretion in failing to exclude an unqualified expert witness and the improper denial of motions for mistrial when jurors were allowed to view a search warrant affidavit containing statements made by a confidential informant and when the prosecutor made an improper remark during closing argument.[19]

---

[17]  *State ex rel. Wallace v. State*, 2014-OK-622 (La. 1/23/15), 159 So.3d 452 and 2014-KH-606 (La. 1/23/15), 159 So.3d 451; State Rec., Vol. 4 of 4.

[18]  Rec. Doc. 3, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus signed and dated February 21, 2015.

[19]  Wallace signed his original application on February 21, 2015.    He then sought and was granted leave to supplement and amend this application.    On March 24, 2015, he filed a more detailed memorandum, which not only identified, but also briefed, these three stated claims for relief.    The Court notes that the grounds for relief stated in his original federal application (Rec. Doc. 5, pp. 5-10) differ slightly from those listed and briefed in his amended petition. (Rec. Doc. 6, p. 6).    In his original application, he lists ground one as a

The State filed a response, conceding that the federal application is timely and that state court remedies have been exhausted as to all of the claims.    The State contends part of claim three has been procedurally defaulted and that all of the claims fail on the merits.[20] Wallace filed a reply to the State's response.[21]

### *Facts*

On direct appeal, the Louisiana First Circuit summarized the facts as follows:

> As a result of communication with the Pearl River County Sheriff's Office in Mississippi, Detective Christopher Comeaux of the St. Tammany Parish Sheriffs Office (narcotics division) began an investigation of possible methamphetamine production activities taking place at a residence located at 215 Dogwood Street in Slidell. Detective Comeaux enlisted the assistance of other narcotics officers, and on December 12, 2009, Detective Brian Danigole began conducting surveillance of the residence. While conducting surveillance, Detective Comeaux contacted Detective Danigole and suggested that they relocate their surveillance to a nearby Wal–Mart and to be on the lookout for the defendant. The officers spotted a green Dodge pickup truck with a Mississippi license plate, the vehicle in which the defendant was known to be travelling. As Detective Danigole was returning to the defendant's residence, the Dodge pickup truck passed his vehicle.
>
> As the defendant pulled into his driveway and exited his vehicle, Detective Bill Johnson, who was travelling in an unmarked, silver Dodge Dakota and dressed in plain clothing, exited his vehicle and engaged the defendant at the driver's side of the vehicle. As Detective Johnson identified himself as a member of the sheriff's office, the defendant turned around to face him. The detective

---

Fourth Amendment violation claim with regard to the illegal seizure of evidence.    This issue will be addressed herein in the context of his ineffective assistance claim.

[20]  Rec. Doc. 16.

[21]  Rec. Doc. 21.

observed what he immediately identified as a crack pipe in the defendant's hand. Detective Johnson specifically described the object as a homemade crack pipe made out of a metal socket and a metal wool pad inserted into one of the ends of the pipe as a filter. Detective Johnson seized the object, advised the defendant of his Miranda rights, and placed him under arrest. Detective Johnson also seized $944.00 from the defendant's pocket as a result of a pat-down search.

On the back driver's side of the floorboard of the defendant's vehicle, Detective Johnson located supplies and chemicals, in Wal–Mart grocery bags, that could be used in the creation or operation of a clandestine laboratory for the manufacture of methamphetamine. These items included coffee filters, a funnel, four boxes of table salt, fuel, drain cleaner, a lighter, a grinder, Zyrtec D, and batteries. The defendant told Detective Danigole that he purchased the items for another individual to cook methamphetamine.[22]

### *Procedural Default*

Initially, the Court considers and rejects the State's contention that this Court may not review one aspect of Wallace's ineffective assistance of appellate counsel claim.    The State argues that a portion of his third ground for relief has been procedurally defaulted because the state district court's ruling denying relief referenced Louisiana Code of Criminal Procedure article 930.4.[23]    The claim at issue involves the failure of appellate counsel to raise a claim on appeal with respect to the trial court's failure to declare a mistrial.    Some confusion results because Wallace actually raises two separate alleged instances during trial

---

[22]   *State v. Wallace*, 2012 WL 1551736, at * 1.

[23]   Rec. Doc. 16, State's Response, p. 5.

where defense counsel moved for a mistrial and those requests were improperly denied.

That is, Wallace claims that counsel objected and moved for a mistrial when jurors were

allowed to view a search warrant affidavit that was introduced for record-keeping purposes

only and also during closing argument when the prosecutor made a comment about his

failure to testify.    The State fails to acknowledge both bases for this claim and only

addresses ineffective assistance of counsel on appeal with respect to the latter incident

occurring during closing argument.    Furthermore, adding to the confusion, each of these

claims was raised separately via different post-conviction relief applications in the state

courts.[24]

---

[24]  As previously set forth in the procedural history, Wallace's May 2014 post-conviction relief application in the state district court presented only a claim regarding appellate counsel's failure to raise the denial of mistrial where jurors were allowed to view hearsay contained in the search warrant affidavit.    This claim was also included in his writ application to the intermediate court (2014-KW-957) and the Louisiana Supreme Court (2014-OK-622).    Wallace's January 2015 supplemental post-conviction application presented the claim regarding appellate counsel's ineffective assistance for failing to raise the denial of mistrial where the prosecutor made an improper remark during closing argument.    This claim does not appear in either writ application to the intermediate appellate court.    He presented the claim in his Louisiana Supreme Court writ application before that claim had been ruled upon by the lower courts.    Although not addressed by the State, the Court notes that this particular aspect of the claim does not appear to have been properly exhausted.    The Court may nevertheless exercise its discretion to deny it as meritless.    While a federal court may not grant *habeas* relief on any claim that the state prisoner has not first exhausted in the state courts, *see* 28 U.S.C. § 2254(b)(1), it may, if the claim lacks merit, deny relief, notwithstanding the failure to exhaust.    *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")

A review of the state court record reveals that the appellate ineffective-assistance-of-counsel claim at issue was not, in fact, included in his post-conviction relief application filed in May 2014, as the State contends.    The claim therefore could not have been addressed in the state district court's ruling upon which the State's procedural default argument rests. Given the State's flawed reasoning, this Court cannot accept the State's argument that the state courts applied Louisiana Code of Criminal Procedure article 930.4 to bar this claim for relief.    This claim has not been procedurally defaulted and is properly before this Court for review.

### *Standards of Review on the Merits*

Title 28 U.S.C. § 2254(d) (1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing

evidence."). With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010). An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court

11

precedent simply does not warrant *habeas* relief.    *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").    "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA."    *Harrington v. Richter*, 562 U.S. 86 (2011).    Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents."    *Harrington*, 562 U.S. at 102 (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal *habeas corpus* review as a vehicle to second-guess the reasonable decisions of state courts.").

With respect to claims that have not been adjudicated on the merits by the state courts, a federal court does not conduct review pursuant to 28 U.S.C. § 2254(d).    Instead, the Court applies a *de novo* standard of review.    *See Hoffman v. Cain*, 752 F.3d 430, 437 (5th Cir.2014); *In Re: Paredes*, 587 F. Appx. 805, 814 (5th Cir. 2014).

### *Analysis*

**1.** *Ineffective assistance of trial counsel*

In his first two claims for relief, Wallace contends trial counsel was ineffective for failing to file a motion to suppress physical evidence seized without a warrant and that the

12

omission denied Wallace a fair opportunity to litigate his Fourth Amendment claims.[25]

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir.1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir.2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e*, deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must

---

[25]   Wallace's memorandum plainly argues these grounds in the context of an asserted ineffective-assistance-of-counsel claim.    To the extent that Wallace is attempting here to allege an independent claim that the police violated his Fourth Amendment rights because they lacked probable cause to stop and arrest him or to conduct a warrantless search of his vehicle, that claim was not fairly presented to the state courts and is not properly before this Court for review.    Even if that claim were before the Court, federal *habeas* review of a petitioner's arrest or search by state police is barred where the state has provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976).    The relevant inquiry under *Stone* is whether a *habeas* petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided. *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir.1978); *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir.2002), *cert. denied*, 537 U.S. 1196 (2003).

demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir.2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir.1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir.1986); *Matheson v. King*, 751 F.2d 1432, 1441 (5th Cir.1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

Because the state courts rejected Wallace's ineffective assistance of counsel claims on

14

the merits and because such claims present a mixed question of law and fact, this Court must defer to the state court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir.2002). In fact, the United States Supreme Court has held that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims must be "doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. at 190).

Here, Wallace claims trial counsel should have moved to suppress the evidence because officers had no legal authority to conduct an investigatory stop and the seizure of evidence from his vehicle resulting from that confrontation was illegal. The state district court dismissed these intertwined claims as meritless. The appellate courts denied relief without stated reasons. Wallace has not established that the state court's denial of these grounds was contrary to, or an unreasonable application of, *Strickland*.

Counsel cannot have been ineffective for failing to file a meritless motion. *See Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir.2002) (citing *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir.1990) ("This Court has made clear that counsel is not required to make futile motions or objections.")); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir.1994). In this case, Wallace cannot show that a motion to suppress the evidence likely would have succeeded.

15

Therefore, he has not demonstrated a reasonable probability that the outcome of the trial would have been different had counsel moved to suppress the evidence found in his vehicle.

An investigative stop need only be supported by a reasonable, articulable suspicion that an individual is engaged in criminal activity, whereas an arrest must be supported by probable cause. *See Terry v. Ohio*, 392 U.S. 1, 25–31 (1968); *see also United States v. Zavala*, 541 F.3d 562, 574 (5th Cir.2008).   The record in this case establishes that police officers had reasonable suspicion to initiate an encounter with Wallace, whom they believed was involved in the illegal production of methamphetamine.   St. Tammany Parish Detective, Christopher Comeaux, received specific, credible information regarding Wallace's activity from a detective with the Pearl River County Sheriff's Office in Mississippi.[26]   Detective Comeaux relayed this information to the assisting officers, who were all aware that, based on the credible suspicion of criminal activity, they were to investigate and confront Wallace to confirm or rule out his participation in illegal narcotics activity.   The information supplied to Detective Comeaux as to the location of Wallace's residence and his vehicle was independently confirmed by officers.   Additionally, Detective Steven Gaudet, who located Wallace at a nearby store and identified his vehicle, testified he also observed Wallace's extremely suspicious, nervous behavior when leaving the store with his purchases.

---

[26]   As asserted in a motion for limine filed by the defense and agreed upon at trial, the basis for the Pearl River County detective's information (reference to a reliable confidential informant) was not brought out at trial.

Another officer, Detective Brian Danigole, observed Wallace talking to a female in a different vehicle in the parking lot.   Wallace returned to his truck alone.

Detective Danigole and Detective Johnson followed Wallace out of the parking lot, with Detective Bill Johnson in the lead vehicle.   Wallace drove to his residence and pulled into the driveway.   Detective Johnson pulled into the driveway behind his vehicle and approached him on the driver's side with the intention of questioning Wallace about his purported criminal narcotics involvement.   Detective Johnson identified himself, and as Wallace turned to face him, Detective Johnson saw that he was holding a homemade crack pipe in his hand.   Detective Johnson confiscated the item and placed Wallace under arrest, advising him of his *Miranda* rights; as he was doing this, he noticed bags on the rear driver's side floorboard that contained suspicious items he immediately recognized as associated with methamphetamine production.   Detective Danigole conducted the search of the vehicle while Detective Johnson pursued the female suspect, whom they recognized from the Walmart parking lot, as she drove past Wallace's residence.

Under the search-incident-to-arrest exception, the Supreme Court has clarified that police may search a vehicle incident to a recent occupant's arrest if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe that the vehicle contains evidence of the offense of the arrest.   *See Arizona v. Gant*, 556 U.S. 332, 351 (2009).   Wallace, who had just exited his vehicle, was found in

17

possession of illegal drug paraphernalia.    The officers also possessed knowledge of other facts and circumstances leading to a reasonable belief that Wallace was engaged in drug possession and production.    Thus, the vehicle search incident to his arrest was justified because, under the circumstances, it was reasonable to believe that evidence associated with illegal narcotics was inside the vehicle.    Officers had probable cause to arrest Wallace and conduct a warrantless vehicle search.

Furthermore, when a police officer is in a place where he is lawfully permitted to be, he may seize evidence in plain view without a warrant.    In this case, the officers could see into the open plastic bags that were in plain view in Wallace's vehicle and likewise could immediately identify the contents as items associated with methamphetamine production. The "plain view" exception allows police to seize items where: (1) the police lawfully entered the area where the item was located; (2) the item was in plain view; (3) the incriminating nature of the item was "immediately apparent;" and (4) the police had a lawful right of access to the item.    *United States v. Rodriguez*, 601 F.3d 402, 407 (5th Cir.2010) (citing *Horton v. California*, 496 U.S. 128, 136–37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) ("Where the initial intrusion that brings the police within plain view of such an article is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate.")).    "The incriminating nature of an item is 'immediately apparent' if the officers have 'probable cause' to believe that the item is either evidence of a crime or

18

contraband.     Probable cause does not require certainty."     *Id.* at 407 (quoting *United States v. Waldrop*, 404 F.3d 365, 369 (5th Cir.2005)).     Here, the officers were lawfully present when they placed Wallace under arrest for possession of drug paraphernalia, during which they visually scanned the vehicle and identified items, which were known to be associated with the manufacture of methamphetamine, in plain view in his vehicle.     Under these circumstances, the seizure of the bags without a warrant was constitutional.

Finally, the "inevitable discovery" doctrine provides that evidence found in an unlawful search may be admitted if the State can show that the evidence inevitably would have been discovered by lawful means. *Nix v. Williams*, 467 U.S. 431, 444 (1984).     Officer Comeaux obtained a search warrant for Wallace's residence that same day.     Given that officers were there to investigate the possible manufacture of methamphetamine and Wallace had just purchased items at Walmart that were associated with the production of methamphetamine, which lay in plain view of the officers, along with a visible grocery list of those items on the dashboard, the scope of the warrant was likely to include Wallace's vehicle as well.     Therefore, even if the evidence in the vehicle was discovered illegally, its suppression was not required if officers would have discovered it by lawful means, which would have occurred in this case during the execution of a validly obtained search warrant.

Under the circumstances, counsel had no sound basis upon which to move to suppress the evidence found in Wallace's vehicle; therefore, it is not reasonable to conclude

19

that the evidence would have been excluded even if counsel had pursued a motion to suppress.    Wallace has not carried his burden of showing that there is a reasonable probability, as defined in *Strickland*, that but for his counsel's alleged deficiency the result of the proceeding would have been different. The state court's decision rejecting Wallace's claims of ineffective assistance of trial counsel was neither contrary to nor an unreasonable application of *Strickland.*    Accordingly, Wallace is not entitled to *habeas* relief on this claim.

**2. *Ineffective assistance of appellate counsel***

Wallace raises several instances of alleged ineffective assistance of appellate counsel. These include failure to raise on appeal:    (a) the trial court's error in allowing testimony by an unqualified expert witness and (b) the trial court's failure to declare a mistrial when the jurors viewed the search warrant affidavit and when the prosecutor made an improper remark in closing argument.

First, Wallace argues that appellate counsel omitted as grounds for appeal the trial court's failure to sustain defense counsel's objection to qualifying Detective Comeaux as an expert witness in the area of methamphetamine production.[27]    The trial court deemed a *Daubert* hearing unnecessary,[28]  but allowed defense counsel to cross-examine the witness on his expertise and qualifications before ruling on the matter and accepting him as an

---

[27]   State Rec., Vol. 2 of 4, Trial transcript, pp. 321-29, 382-83.

[28]   *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

expert.    Defense counsel extensively examined Detective Comeaux with respect to his training and expertise in the area, at the conclusion of which he detailed his objection to the State's request to qualify him as an expert witness.    In that objection, defense counsel conceded that Detective Comeaux in his line of work and training has obviously accumulated a good bit of knowledge, but argued that he lacks higher education courses or a degree in chemistry, identifies no specific scientific field in this area of expertise, and has never taught or published on the issue.    The trial court overruled the objection and allowed Detective Comeaux to offer his expert opinion on the subject of methamphetamine production.

The state district court on post-conviction review rejected Wallace's claim that appellate counsel was ineffective in failing to raise this issue on appeal, noting the substantive claim was without merit.    The appellate courts likewise denied relief.

Persons convicted of a crime are entitled to effective assistance of counsel in their first appeal of right. *See Evitts v. Lucey*, 469 U.S. 387, 394 (1985). To prove that appellate counsel was ineffective, a petitioner must satisfy the two-prong test enunciated in *Strickland v. Washington*, 466 U.S. 668, 697 (1984) (*i.e.*, that counsel's performance was deficient and that the deficient performance prejudiced the defense). *See Busby v. Dretke*, 359 F.3d 708, 714 (5th Cir.2004).    A showing of prejudice in this context requires that a petitioner establish a reasonable probability that he would have succeeded on appeal but for his counsel's deficient representation.    *Dorsey v. Stephens*, 720 F.3d 309, 321 n. 59 (5th

Cir.2013) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000) and *Strickland v. Washington*, 466 U.S. at 694).    Because the state courts adjudicated the claim on the merits and the issue of ineffective assistance of counsel is a mixed question of law and fact, the question before this Court is whether the state court's denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.    28 U.S.C. 2254(d)(1); *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir.2012).

Wallace contests the basis for the trial court's ruling, arguing that Officer Comeaux was a "self-proclaimed expert in the mixture and compounding of household items to make drugs" and that "the trial court permeated the fact finding process with unfounded, unreliable and untested evidence in the form of expert testimony by allowing a police officer untrained in Chemistry or Pharmacology."    He contends the trial court's ruling contravened *Daubert* and that appellate counsel should have raised the issue on appeal.

In an effort to prevent jurors from hearing expert opinions based on untested theories or invalid methods, the Supreme Court held in *Daubert* that, before a party can present expert testimony based on "scientific knowledge," the witness must demonstrate to the trial court, in its capacity as "gatekeeper," that the proposed expert testimony is based on "good" science and, therefore, sufficiently reliable. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 595–99 (1993).    This requirement ensures that knowledge offered is "more than subjective belief or unsupported speculation." *Id.* Expert testimony must be supported by

22

"appropriate validation—*i.e.*, 'good grounds,' based on what is known." *Id.* (quoting *Daubert*, 509 U.S. at 590).   Here, the trial court determined a *Daubert* hearing was unnecessary to establish whether a field of expertise existed with regard to the manufacturing process for methamphetamine in clandestine laboratory situations.   Wallace has not offered anything to contradict this finding.   Indeed, Louisiana courts routinely accept officers as experts in this capacity on the subject of methamphetamine production.   *See e.g.*, *State v. Wynne*, 47,625 (La. App. 2 Cir. 2013), 108 So.3d 864, 866 (state trooper recognized as an expert in the field of identification of methamphetamine labs and the manufacturing process for methamphetamine); *State v. Smith*, 974 So.2d 881, 889-90 (La. App. 3 Cir. 2008) (finding police sergeant trained and qualified to identify the items possessed by the defendant and used to manufacture methamphetamine); *State v. Benedict*, 887 So.2d 649, 654 (La. App. 3 Cir. 2004) (officer properly qualified through formal training as expert in method of methamphetamine manufacturing).

Furthermore, the record in this case conclusively shows, as the state district court found, that "the officer's knowledge, experience and training was thoroughly vetted" before the trial court determined whether he would be allowed to offer an expert opinion. Defense counsel, in stating his objection on the record, even had to concede the detective's substantial knowledge in the field based on his training and experience.   The record in fact reflects that on two prior occasions, Detective Comeaux was tendered and served as an

expert witness in the same field of expertise.

Moreover, his expert opinion, although allowed into evidence, could still be discounted by jurors in this case. The trial court's ruling on admissibility in its capacity as a gatekeeper merely serves as a "preliminary assessment." *See Daubert*, 509 U.S. at 592. Thus, here, the jury was still able to assess and determine the weight to be given Detective Comeaux's testimony. *See Primrose Operating Co. v. Natl. American Ins. Co.*, 382 F.3d 546, 562 (5th Cir.2004) (quoting *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir.1996) (As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.").

Appellate counsel need not advance every argument urged by a petitioner, regardless of its merit. *Evitts v. Lucey*, 469 U.S. at 394; *see also Jones v. Barnes*, 463 U.S. 745, 751–54 (1983) (an experienced attorney knows the importance of "winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues")." Indeed "[a] brief that raises every colorable issue runs the risk of burying good arguments." *Jones*, 463 U.S. at 753. Here, appellate counsel reasonably determined that it was not in Wallace's best interest to raise this particular issue on appeal. The state court's denial of relief on this issue was not contrary to or an unreasonable application of *Strickland*.

Next, Wallace asserts that appellate counsel was ineffective for not urging as grounds

24

for appeal that the trial court erred in failing to declare a mistrial on two occasions.     The first instance occurred near the end of trial when the exhibits were placed on display for jurors.     Although the search warrant affidavit had been offered by the State during trial as evidence for recordkeeping purposes only, it was mistakenly included in this group of exhibits.[29]     Defense counsel moved for a mistrial, arguing that at least four jurors viewed the document.     He argued that the affidavit contained information about a confidential informant and the basis of the initial investigation.     The State agreed that the document had been inadvertently included and conceded that it was intended and introduced for recordkeeping purposes only.     In denying the motion, the court noted that the evidence was laid out and defense counsel had had an opportunity to view it all.     The trial court further found that the evidence was not of such a nature as to warrant a mistrial. Nonetheless, the trial court agreed to admonish the jury, stating:

> Ladies and gentlemen, Exhibit 52 was introduced for recordkeeping purposes. It was not intended for your viewing.     It was inadvertently placed on the table for review.     I want to admonish any of you that did, in fact, look at this document to disregard anything that you may have seen in Exhibit Number 52, which was the affidavit for a search warrant.

At defense counsel's request, jurors were further instructed that anyone who did read it should not discuss the document during deliberations.[30]     At the conclusion of trial, before

---

[29]   State Rec., Vol. 3 of 4, Search Warrant Affidavit; State Rec. Vol. 2 of 4, pp. 333-34.

[30]   State Rec., Vol. 2 of 4, Trial Transcript, pp. 422-25.

jurors retired for deliberation, the trial court gave a formal instruction "that they must not consider any evidence which was not admitted or which you were instructed to disregard or which an objection was sustained."[31]

Not only did the trial court admonish the jury to disregard the search warrant affidavit that was introduced solely for recordkeeping purposes, it also instructed them not to discuss the document during deliberations if they viewed it, and reiterated the warning just before deliberations began not to consider evidence they were specifically instructed to disregard.    Generally, it may be presumed that the jury followed a trial court's instructions. *Weeks v. Angelone*, 528 U.S. 225, 234, 120 S.Ct. 727, 145 L.Ed.2d 727 (2000).    The curative admonishment in this case, coupled with express jury instructions, was sufficient to remove any possible prejudice from the inadvertent inclusion of the search warrant affidavit that may have been viewed by four jurors.    Given the trial court's discretion in deciding whether to grant a mistrial and the alternate admonishment and instruction given the jury, appellate counsel reasonably chose not to include this alleged error as grounds for appeal. Furthermore, Wallace cannot establish that the appellate court likely would have granted relief, had the claim been raised. The state court's denial of relief on this issue was not contrary to or an unreasonable application of *Strickland.*

Finally, Wallace asserts that appellate counsel was ineffective for not urging on appeal

---

[31] *Id.*, p. 457.

the trial court's alleged error in failing to declare a mistrial when the prosecutor during closing argument made an alleged reference to his failure to testify.   During closing argument, the prosecutor stated:

> What do we have?   Roger Wallace at different locations gets even more Zyrtec and Claratin and different things and different ingredients to make this. Not one iota of evidence of any kind of medical reason why it might be needed.[32]

Defense counsel moved for a mistrial, arguing the State improperly referred to the defense's failure to introduce any medical evidence to prove its case.   The trial court denied the motion for a mistrial, but agreed to give an admonition to the jury that the defense has no burden to prove anything at all.   The trial court admonished the jury as follows:

> I want to clarify something for you at this time.   You've heard the objection made by the defense regarding the State's reference to a lack of evidence.   I want to make it clear to you that the defendant has absolutely no obligation to present any evidence to the jury, that the burden is on the State to prove every element of the offense charged beyond a reasonable doubt, and you are to draw no inferences from the State's remarks.
>
> And I'm going to make clear to you in my further charges that the burden is completely on the State.   The defendant has no burden whatsoever to present any evidence to the jury.[33]

The trial court's final instructions indeed charged the jury as stated above that "the defendant is not required by law to call any witnesses or to produce any evidence.

---

[32]  State Rec., Vol. 2 of 4, Trial Transcript, p. 429.

[33]  *Id*. at 432.

27

Defendant is not required to testify.    No presumption of guilt may be raised and no inference of any kind may be drawn from the fact that the defendant did not testify in this case."[34]   The jury was also instructed that their decision must be based only on the evidence and that the lawyers' statements and arguments are not evidence.

In defining the contours of the Fifth Amendment right against self-incrimination in this context, the United States Fifth Circuit Court of Appeals has explained:

> A prosecutor's comment on a defendant's failure to testify violates the Fifth Amendment right against self-incrimination. *Griffin v. California*, 380 U.S. 609, 613–15, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *United States v. Martinez–Larraga*, 517 F.3d 258, 266 (5th Cir.2008). Remarks made by a prosecutor must be considered in context. *United States v. Delgado*, 672 F.3d 320, 335 (5th Cir.2012) (en banc) (direct appeal). The Fifth Amendment is violated if the prosecutor's "manifest intent ... must have been to comment on the defendant's silence" or if "the character of the remark [was] such that the jury would naturally and necessarily construe it as a comment on the defendant's silence." *Cotton v. Cockrell*, 343 F.3d 746, 751 (5th Cir.2003). There is no manifest intent to comment on a defendant's failure to testify if there is another "equally plausible" explanation for a prosecutor's remarks. United *States v. Collins*, 972 F.2d 1385, 1406 (5th Cir.1992) (internal quotation and citation omitted). The relevant question with regard to the character of such a remark is not whether a jury "possibly or even probably" would view it as a comment on the defendant's silence, but whether a jury would necessarily construe it as such. *Id.*

*Lee v. Michael*, 476 F. Appx. 29, 31 (5th Cir. 2012).

An attorney may argue to the jury the "inferences and conclusions" that it should draw from the evidence so long as counsel's assertions are based on the evidence. *See*

---

[34]  *Id.* at 459.

*Delgado*, 672 F.3d at 336.   In this case, the prosecutor argued from the evidence, and lack of conflicting evidence, that Wallace purchased the items for purposes of manufacturing methamphetamine.   The prosecutor's remark was a comment on the defense's failure to undermine or rebut the State's evidence, rather than any sort of reference to Wallace's silence. *See Montoya v. Collins*, 955 F.2d 279, 287 (5th Cir.1992); *United States v. Guzman*, 781 F.2d 428, 432 (5th Cir.1986).

In any event, the curative admonishment, coupled with express jury instructions, also sufficed to remove any possible prejudice that could have resulted from the prosecutor's comment in closing argument.   Given the trial court's discretion in deciding whether to grant a mistrial and the alternate jury admonishment and instruction, which the jurors are presumed to have followed, appellate counsel reasonably chose not to include this alleged error as grounds on appeal.   Furthermore, Wallace cannot establish that the appellate court likely would have granted relief, had the claim been raised.   Accordingly, he is not entitled to relief on this claim.

## <u>RECOMMENDATION</u>

**IT IS RECOMMENDED** that Wallace's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14)

days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[35]

New Orleans, Louisiana, this ___14th___ day of _____June_____, 2016.

**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[35] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.